Our third appeal of the morning, that's in case number 23-1392, Melody Pak v. the President of the United States, Joseph Biden. Is it Ms. Sustek? Good morning. Good morning. Good morning, Your Honors. May it please the Court, my name is Veronica Sustek and I represent the Plaintiff Appellants. This case is about two things. First, it's about what an agency must do before it can permanently separate U.S. families. Second, it's about whether an executive agency is permitted to have a policy of not doing what Congress has told it it must, and whether this Court can use its power to serve as a check on unlawful agency actions. We ask this Court to reverse the District Court's decision because the Court dismissed this case under the doctrine of consular non-reviewability, which in general bars judicial review of consular visa decisions. Consular officers do have the authority to make decisions on individual visa applications. That's a very broad and well-settled authority. But those decisions must be based in fact, they must be rational, and they must be made pursuant to procedures laid out by the law. So Ms. Sustek, obviously you know you're here with the uphill battle given the scope of the consular non-reviewability doctrine. So I'm wondering, looking at Section 1182A.3 capital B, little one, the Supreme Court has that carries with it a presumption that that in fact is what the consular officer was doing. So why was the brief, though it was, explanation here inadequate? Your Honor, the Supreme Court has indeed in Din said that a statutory citation is sufficient for a facially legitimate and bona fide decision to be found. However, the court left open the possibility of attacking that decision where bad faith has been affirmatively alleged, and we are affirmatively alleging bad faith. But don't you have to back that? I mean, it can't be so easy for somebody simply to come in and utter the words bad faith. And we've recognized this before. It's going to be very hard to show that. And maybe you can just summarize what you think your best evidence of bad faith is. Absolutely, Your Honor. And if you could, in answering that question, just how that squares with Yaffe, with our opinion in Yaffe. Understood. So in Yaffe, this court said that bad faith could mean dishonesty of belief, belief, purpose, or motive. The court in Din did not actually explain or describe what bad faith would be. It just left the door open. So can I say, I mean, I think one of the things we've been thinking about is perhaps, you know, if there were some collateral evidence that the consular officer was taking bribes or that the consular officer was deciding on the basis of a constitutionally impermissible reason, something like a little tiny escape hatch for these things. But I don't see that here. Can I ask you a factual question? None of these people served under the Shah. You know, it was the Islamic Revolutionary Guard Corps. And that inevitably, to me, means, and looking at the dates, all after the revolution. All of the plaintiffs served in 1979. Right. So the revolution was right around 1979. But if it was the Islamic Revolutionary Guard Corps, they were serving, even the ones who served all the way back then, not the ones who served more recently, in an organization whose overall mission was actually quite hostile to the United States. Your Honor, that is part of the analysis that needs to be done. So for conscripts who served prior to the formal designation of the IRGC in 2019, it is a Tier 3 analysis that has to be done. So there has to be a finding that it was indeed a terrorist organization at the time of the applicant's service. So even if there is a finding that going back 45 years to, or 44 to 1979, it was a terrorist organization, that's not the end of the inquiry. There also has to be a question of what did the applicant specifically do to complete their military service? So some of our plaintiffs painted walls. It was essentially civil service. So we had an engineer who went and built hospitals and built bridges, took pregnant women to doctor's appointments. So that is another part of the question. And then there's a third piece, which there is a mental intent component. So did you voluntarily and knowingly serve on behalf of a terrorist organization? Our bad faith allegation rests in large part on those latter two pieces because an individual's actual activities in the military are never requested in any of the visa application process. They are not routinely asked during visa interviews. And when our plaintiffs did try to offer that evidence, their efforts were rebuffed, they were just told no, or they were directed to an irrelevant agency to submit an irrelevant waiver. Isn't that asking us, though, to get into the counselor's decision and thought process for why he made this decision, which is exactly what we're not supposed to do? I don't think so, Your Honor. Because wouldn't we have to evaluate why he decided what he did? And actually to add to what Judge St. Eve is saying, aren't you really arguing for a requirement of an explanation, not just a citation of a statute, but an actual opinion or something, or a memorandum explanation? Because if you have that, then you might be able to follow up on some of those other questions. But there is no such requirement to my knowledge. That's correct. There is no requirement that visa applicants receive anything more than a citation. We're not asking for anything more than the citation that received. We're not asking for a subsection with specific allegations of whether it was material support. But what you are saying is that in your view of the facts that attach to your client, that the decision-making was so flawed that it had to amount to bad faith. That's effectively your argument. That's right, Your Honor. And the reason that is is because there is evidence that defendants are actively refusing to take any of the evidence required to make a valid decision. So essentially through the standard visa process, they receive a military ID card which states a person's name, their date of birth, and the years of their service. That's all it says. That is sufficient for a Tier 1 designation. So if you have an IRGC conscript who served in 2020, so after the April 2019 designation, they give you that military ID card. It says IRGC. It says 2020. That's the end of the inquiry for a counselor-officer. But doesn't that just get back circular to why the counselor made the decision that the counselor made? And we'd have to dig into that a bit, which we're not supposed to do. I think what the court can do is look at what the statutes say. What are the actual facts? What are the elements that need to be found? And we were dismissed at the motion-to-dismiss stage, so we didn't have an opportunity to prove any of our allegations. Our allegations were that they were never asked, it is not elicited through the normal visa process, and when they attempted to submit that evidence to try and get exemptions and waivers, they were turned away and the door was shut to their ability to prove their innocence, essentially. And wouldn't that require an assessment of that evidence that you wanted to submit? It would require an assessment by the counselor-officers, but they're refusing to take any evidence. The threshold question is they are refusing to allow people to prove eligibility, which it is the visa applicant's burden to prove. So can I ask this? I mean, I can't, in my own mind, figure out how your system would work without the court's access to the file that the counselor-officer used, and you're making an assumption that the only things in the file are the things that the applicants themselves submitted, but I'm not sure that's necessarily true. Well, we are making two allegations, which is that there is a broader process problem, which wouldn't require necessarily looking into individual visa applications. The bad faith question, well, I don't think that would require looking into it either. What we have alleged is that they're not taking the evidence and it's evident on the face of the standard visa application, which your honors could look up online. It is there for anybody to look at. Those things do not ask those questions. I think Judge Wood's point is perhaps broader. I don't want to speak for it, but the point is that your clients are going to, they're applying for a visa, they're going to make certain representations, right? But the executive branch of the government could very well have a perspective on the organization and its kind of state as of a particular point in time, and here that point in time is well before the 2019 designation. Yes, Your Honor, but that's not really. But that's not where the inquiry ends. The consular officer has to figure out what were the applicant's activities and what was their mental state, which requires that that evidence actively be taken. But after taking account of the executive branch perspective, here you have the consular officers that invoke the, what, 1183A3B provision expressly, right? And you're asking us effectively to somehow conduct judicial review of that, that it's so, that decision is so flawed from the applicant's perspective that it has to amount to bad faith. And that's going to pry open some form of judicial review. The courts. And I see a separation of powers problem on that. I don't, I, what, what, what review would we conduct and under what standard and the executive branch could very, I think, take the position. We are not willing to expose our intelligence about X, Y, Z organization as of X date. We're not willing to do that. In our view, it doesn't require revealing any national security secrets and respectfully these statutes that lay out the tier three designation that was already written by Congress with national security in mind. And it told consular officers the specific elements they have to find in order to make these decisions. By Congress against the backdrop of the consular non-reviewability doctrine that the reason I started out with, which the statutory citation is I think in this case, although correct me if I'm wrong, that there was just a generic citation to 1182 a three B and the officer didn't dig into subpart Roman numeral one or subpart Roman numeral two. And so I wondered if you were at all making the argument that even the statutory citation wasn't complete enough to understand exactly why the visa was being denied. We are not making that argument. Of course it would be lovely if we could get more detailed, but that's not the argument that we're making. Uh, we are simply saying that the statutory citation where you're looking at tier three, uh, the statutory citation is sufficient where you're looking at tier three that Congress has required the agency to take. Okay. Before you, oh, you are out. And I am. I have one other question because I think a predicate problem that you have is locating, um, some kind of judicially enforceable right to enter the United States in the first instance because you know, your clients are all non U.S. citizens. Um, you need to go through this complex determination about whether the rights of a U.S. citizen, actually one of them is a lawful permanent resident, I think, but let's stick with citizens. Are those rights being implicated when the family isn't permitted to reunite? And so I just put that out there as another complication for you. Sure. And, uh, the court in Din left that question open. It's been open. Yes. And this court has, uh, um, up to this point. Um, and so I, our argument is just that the U.S. citizen plaintiffs have a, an interest in the visa applications, the petitions that have been filed on behalf of their family members and that there is a right in the United States and important and longstanding right to family unity, not necessarily a right to entry of the visa applicants, but a right to family unity that can only be deprived after due process has been given. And they have not been given that. Okay, great. We'll hear from your colleague. Oh, yeah. Your, your reserve. You've got rebuttal, right? Okay. Okay. So we'll hear from the government. Yep. Good morning, your honors. May it please the court. Victoria Tercio is on behalf of the government.  the doctrine of consular non-reviewability and the APA's general preclusion against the government. So, so answer for me the question that I alluded to earlier, suppose a particular consular officer regrettably is for sale. And that person, you know, charges $10,000 to make a favorable visa determination. And if people who don't pay the money don't get the,  You're saying that there's no way that that could be the case. reviewed in a U.S. court? No, your honor. There, the general presumption is that the decisions of consular officers are not reviewable by the courts. However, two exceptions to that general rule do exist. First, the Mandela exception, uh, for U.S. citizens and second, a bad faith exception, but the plaintiff still needs to make an affirmative showing of bad faith before the court can review, uh, of, of facial legitimate and bona fide, uh, decision of consular officer in this court's presidential decisions in dicta. We've understood that an affirmative showing of bad faith might look like a consular officer refusing to consider certain evidence or, um, evidence of some religious discrimination. So let's, let's stop on the first for a minute. Suppose it becomes clear. Maybe there's somebody who works in one of the embassies and is willing to talk to interested people. Um, that there's a particular consular officer who just throws in the waste basket, uh, all things proffered by the applicant and just, you know, in the afternoons issues, yeses and mornings issues, nos. Um, is that something that a person could attack in court? That sounds like bad faith to me, Your Honor, but that's not what has been shown in this case. Well, but, but what I'm getting to though, is you're, you're beginning to reach a point where refusal to consider the information, the file is that bad faith? Well, or refusal to put information in a file. The plaintiffs have alleged that consular officers have refused documents in their case, but that is so they refuse to add to the file things that are pertinent to the tier three determination. Yes, but that's inaccurate. The, uh, consular officers had already issued final refusals in every case before the plaintiffs through counsel or these applicants themselves reached out to the consulates with additional, uh, documents that, so every visa applicant had already been refused a visa before. So are you saying there's no obligation to consider these additional documents at the time to do it would have been before the visa application? That's correct, Your Honor. There are, the regulations say that if a consular officer has, um, receives documentary evidence, they're required to consider it, but there are the plaintiffs have not pointed to any regulation or statute, which would require the consular officers to reopen, um, a visa application after they had already been. So you're saying after these, these refusal worksheets have been, there's already been the finding made. That's when the evidentiary proffer or the factual proffer came forward. Yes, Your Honor. Okay. And as to, if I can move to the second exception, uh, to the Mandela exception, uh, the Supreme court said that, uh, the, a U S citizen may bring a challenge to a visa refusal where the constitutional rights have been burdened, but the courts should not just disturb the facial legitimate and bonafide decisions of consular officers. And as judge Wood noted earlier, a facial legitimate and bonafide decision is evidenced by a statutory citation to, uh, the basis of refusal. In this case, the 1182, a three B the general, uh, terrorism related and miscibility grounds. But looking at a three B. Yes. Um, four, there, there are different things that are identified here. And I guess you have to assume that the person did the least important of these things, um, like subpart six to commit an act that the actor knows or reasonably should know for its material support. Now we've coped with this material support language in other contexts, you know, it's material support. Um, taking people to a hospital. What, what is material support? That is a factual inquiry that would be, um, determined by the consular officer at their discretion. And this court has considered whether inconsequential conduct by, um, a visa applicant is validly considered to be, um, found to be terrorist conduct. This court considered that in Hazama where, uh, a plaintiff admitted or the visa applicant admitted to having thrown rocks at, uh, soldiers. And this court said that any recharacterization or reinterpretation of conduct that the consular officer reviews in making an admissibility determinations would turn consular non-reviewability on its head. So, but we did say that throwing rocks, you know, that you wouldn't have to take leave of your senses to think that throwing rocks was a hostile act was, you know, could actually kill somebody if you hit the person in the right place, uh, and so forth. But we've had other cases in, in a somewhat different, uh, area where the idea of material support has come up. So for example, um, you know, what if an organization runs daycare centers, you know, we call it Hamas, you know, and they run daycare centers and that really isn't something that's hurting anybody. It's taking care of little children and yet supporting the daycare centers has been held by us and others to sit, to be, I mean, sort of on a dollar's a dollar idea that this is one thing that Hamas is doing that, uh, furthers its overall mission. So I, I want to know because if it gets that broad, then it actually means breathing. You know, it means doing anything is material support. If you happen to be a member of the organization, I want to know if that's the government's position. Uh, yes, your honor, that, that there shouldn't be any inquiry into the exemption eligibility determinations or the inadmissibility determinations. And actually a question of whether or not the conduct made you inadmissible is a direct attack on the inadmissibility determination, which is, uh, the government's, uh, core argument in this case that this is an indirect attack on the consular officer's decision itself in Matushkina v. Nielsen, uh, plaintiff challenged in an admissibility determination that had been made several years before a consular officer actually refused a visa to the applicant. And this court said that because that inadmissibility determination from the basis of the consular officer's decision to refuse a visa, that the court would not review it, that it was an indirect attack and, uh, was not permissible. Do you think there's a way to, to, oh, a way to plead a claim outside of an indirect challenge? If you're more kind of programmatically challenging, consular determinations on the basis of say, for example, corruption, say, say a former consular officer came forward and said, um, I need to blow the whistle on this. These are all very procedurally deficient. Um, there's really no review going on, um, et cetera, et cetera. Is there a way to lodge that kind of claim? I think, or would the government take the position no matter how it's styled? Um, it's an indirect challenge because that the, the only plaintiff that's going to have standing is somebody that was denied a visa. You're the only, a visa applicant could. Yeah. In other words, could, is there a, is there a way to bring a programmatic challenge to these things? I, I don't believe under this court's precedent in Montesquieu that there is your honor, uh, because everything's indirect because the inadmissibility determination and the exemption eligibility determination of predicate decisions or decisions that the consular officer makes in deciding whether someone is or is not eligible for the visa that they're seeking. So, um, at least at the way that this case has been pled, there can be no, um, reading of it, that it's a programmatic challenge. So there's no conduct, however trivial that these people could have engaged in once they were. So what's the difference between tier one and tier three at that point? Hasn't the government just erased it? Uh, well, a tier one, uh, foreign terrorist organization is designated by the secretary. Yeah. But substantively, I mean, cause you could be tier three and all the, all the officer has to say is, Oh, I think you're a tier three. I mean, because you bought a box of Kleenexes for somebody, you know, is, is that it? Well, the, the statutes themselves provide, uh, consular officers with that discretion, your honor in, in making those determinations. And I would say again to, uh, the decision in, uh, Hazama that we're recharacterizing the conduct or reinterpreting conduct that, that the consular officers. And I'm just saying Hazama at least was violent conduct. I mean, there's something every, it was, it was stated in the materials, it was accessible. You could make a decision about that. I'm well familiar with Hazama, but I just don't think it's the same as what some of these plaintiffs are asserting, which is that they were engaged in the most menial, you know, non-military type tasks imaginable. They weren't throwing rocks at people. Yes. I would say, uh, two things. First, I believe it was you, your honor, uh, mentioned earlier that we don't have all the facts that the consular officers have had before them in the record.  it is in the record that the consular officers interviewed these, these applicants and that some of these applicants underwent, uh, what is referred to as extreme vetting. So we don't have all of the conduct before us. Uh, and second, as I believe the, the panel mentioned earlier, we don't have the specific statutory ground for inadmissibility before us either. So we don't know if it was material support that they, that these, these applicants were found to be inadmissible under it. Could it, but the ladder is a problem, isn't it under the, the man, under the Supreme court's decision. If we don't have the full citation. Well, we have the general citation to the terrorism related inadmissibility grounds. And that was the same citation. They just cited, you know, to title eight. Well, so, uh, generally 1182 B one requires a consular officer to provide a more specific ground of inadmissibility when a consular officer refuses a visa. However, 1182 B one does not apply when a consular officer refuses the visa under the criminal inadmissibility grounds or the terrorism inadmissibility grounds here, because of terrorism inadmissibility grounds were cited. No more specific ground is necessary. Is it, is it the government's view that justice Kennedy's concurring opinions, controlling and dim? Yes, Your Honor. And I believe other circuits have taken that same position as well. There are no further questions and I can sum up. Okay. Very well. Thank you, Your Honor. Uh, I'm sorry. No, go ahead. Okay. Because, uh, this court has held that indirect attacks on a consular officer's decision will implicate concert non-review ability. District courts did not err in determining that plaintiff's claims were non-justiciable. For that reason, we asked the court from the dismissal and the government. Thank you. Okay. Very well. Okay. Now we'll go to rebuttal. Good morning, Your Honors. Please. The court. My name is Shannon. I'm looking for the plaintiff appellants. Um, well, where to start. Uh, let me, let me ask you a question to start, please. How do you respond to the argument that in order to find for your client, that the government, the council would have to reopen the visa application that the counselor denied the visa application. Your claim is they ignored this additional evidence that was presented for an exemption after the denial. And there's nothing that requires the counselor to consider additional evidence. After the counselor's already denied it. The counselor officer absolutely should reopen the applications because those decisions were unlawful to make a tier three determination. As judge would point it out under eight USC, 1182, a three B four six CC. And, uh, five CC six DD and four. CC every place in the law where it discusses a tier three terrorist organization, there is additional fact finding that must take place under where it says, um, the material support. If the applicant committed material or the actor knows or reasonably knows affords material support, then to a tier three terrorist organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, should not have reasonably known that the organization was terrorist organization. The problem we have here is that the designation took effect April, 2019. And at least two of these interviews occurred before the designation, the source of the legal obligation to be more specific in the citation on the worksheet. We're not asking for a subset sub citation. We're not asking for that at all. What we're asking for is for the applicant to be allowed to submit evidence and meet their statutory obligation. But after the fact, after they've already that the visa application was denied. And then each of the applicants here came back trying to submit additional evidence. The visa application should not be denied. If the app, if the application was not legally analyzed and it can't be, how do we know that there was an interview? We don't know what the counselors knew to accept your argument. We would have to assume that the counselor didn't consider any of these factors. In the first instance, the factor to be considered is the applicants intent, their mental state at the time of service and nowhere in any form is the mental state. Why does it have to be in a form? There was an interview. We don't know what else the counselor looked at. That would again, just be asking us to go and look at the counselor's decision at the time of, we're actually not asking the court to look at the counselor's decision. We're asking the court to require defendants to meet their statutory obligation. Congress required that the counselor officer know the mental state when of their, at the time of their service. Why wouldn't the interview satisfy that? Well, the interview happened after the designation. So can I, or the interview happened before the designation? Can I go for maybe an analogy to the argument that I think you're making? And you can tell me if that's not right. There are times let's say when we are hearing appeals from a criminal sentence that somebody has, that a district judge will impose a certain sentence and the judge will say something that makes you realize the judge does not realize that he or she has discretion over a particular factor. And that's grounds for remand for a new sentence, not because the judge has to exercise his or her discretion in any particular way, but the process requires the judge's awareness that this realm of discretion exists. And I think what you're arguing is that maybe the, maybe the visa application will be granted, maybe it'll be denied, but if the process by which it's approached is wrong, then you already have a problem because at least you've been deprived at least of the possibility of a more favorable result. Correct. That's that's your argument. Yes. And there is a second circuit case that is worth pointing to where the second circuit found that the word unless in the statute triggers an affirmative obligation on the government to provide a meaningful opportunity for the visa applicant to sustain their burden. How do you know the finding that you're, that you want much more express? How do you know it's not being made? That visa applicant has never been given the chance to prove their, their intent, which is required for a tier three determination. And the statute says the actor, not the government. Correct. The actor, the applicant is required to prove their mental state at the time of their civilian duties, their military service. And they've been deprived of that. That's all we're asking for the chance to meet their statutory board burden and the, and for the defendants to be required to fill out Congress's statutes as written. That's all we're asking for these decisions. And if I, well, I'll go ahead. Go ahead. You can finish. So I'll just finish. Defendant appellees ask this court for a blank check to deny anyone for any reason with or without evidence under the trigger rounds. And for this court to look the other way, defendants fail to abide by the binding statutes to solicit the information needed to make these determinations. And if this doesn't meet the definition of a visa decision that is not basically legitimate and bonafide, I don't know what could because there's no evidence at least in your fight. There was some credibility issues or questionable stuff here. We have no evidence at all. The statute request fact finding Mr. Puck, Mr. Fatura, they served in the 1980s. The consequences of defendants conduct is similar to the severity in a criminal matter, except the applicant here has been deprived the opportunity to prove their innocence. The crime committed for Mr. John Doe to his calligraphy, not serving in a war zone, but calligraphy on a wall, all plaintiffs completed civilian duties. And we asked for the opportunity for this case to be heard on the merits. Okay. Very well. Thanks to both counsel. Appreciate your advocacy. We'll take the appeal under advisement.